By the Court:

Fithian, J.
The covenants contained in the agreement in this case are mostly independent. The only covenant or thing, the performance of which on the part of the plaintiff can be construed into a condition precedent to his right to demand the money agreed to be paid by defendants, is the delivery of the books of the old firm, with the possession of the office and furniture, and transfer of the lease. This the plaintiff did, so far forth, at least, that it was accepted by defendants as a sufficient “delivery and relinquishment of the business aforesaid,” to induce defendants to enter upon the performance 'of the contract on their part, by paying the first instalment or down payment and entering upon the business. The lease, it appears, was a verbal one, and could be transferred without writing. The delivery of the written agreement was doubtless a sufficient transfer to defendants of such verbal lease as against the plaintiff, especially when accompanied with a delivery of the possession of the demised premises. The other covenants on both sides were executory and continuing, relating to subsequent business and subsequent acts to be done and forborne. They *564 were in their nature independent of each other, and neither could be a condition precedent to the performance of the other. The defendants having thus elected to enter upon the performance of this agreement on their part, could not be permitted thereafter to rescind the contract by reason of any failure on the part of plaintiff to perform any independent agreement in the contract contained and on his part to be performed. For any such breach, defendants have their action at law for damages (Day v. N. Y. C. R.R. Co., 53 Barb. R., 250). The defendants cannot, therefore, set up as a flat hcor to this action any non performance, by the plaintiff, of all or any of the independent covenants ón his part to be performed. In that regard the ruling of the learned justice on the trial was correct.
: The defendants may, however, under the Code, allege and prove, by way of defence, and for a counterclaim (which is in the nature of a cross-action), the neglect or refusal of the plaintiff to perform any or all the covenants by him agreed to be performed and kept, and may offset such damages as they can prox^e resulting from such breach, against the plaintiff’s demand in the action, so as to defeat plaintiff’s recovery altogether, if the damages shown be sufficient toYalan.ce the amount of - plaintiff’s demand proved on Iris part. This defence the defendants have alleged and attempted to prove. And, in my opinion, the proof was of a character which should have been submitted to the jury, under proper instructions from the court. The agreement is very loosely and inartificially drawn. There arc exceptions, reservations, and explanations. Different words, not-precisely equivalent in their meaning, are used in different parts of the instrument, in respect to the same subject-matter, while in two or more instances" general words are used, which, in their broadest and largest sig-' nifieation, would include matters entirely beyond the scope and-purview of the contract, thus showing an intent to use suchxvords in some technical or restricted sense.
It is not surprising then, but quité probable,-that in the hurry of a trial, without time to hear argument or carefully examine, a judge should err in the construction of so uncertain an in *565 strument. Indeed, there are certain provisions of the contract which seem to me incapable of a satisfactory interpretation without parol evidence in explanation.
The first covenant on the part of the plaintiff is “ to sell, relinquish, transfer, and deliver to defendants the good-will and interest of the business now being carried on at No. 103 Broad street, under the name, style, and firm of D. R. De Wolf & Co., as a shipping and commission business,” together with a lease of the office, furniture, books, papers, stationery, &c. “Also, the business of the vessels when in this port, in which the party of the first part now at the present time owns a share, in which he may be able or can control ” (excepting, &c.). Then follows this provision: “ The said party of the first part (plaintiff) agrees that from and after the 1st day of May next, he will not start, commence, or do any business of the same nature or hind, in the city of New York, during the term of five years next ensuing, commencing from the first day of May next. This is not to be understood as debarring him (plaintiff) from buying and selling, to any extent, nor from acting as broker in merchandise, ship or commercial broker (except buying for and shipping to any of the customers of the present firm), insurance broker, or chartering vessels for others, or on his own account, or making advances on or for vessels or for any person, or furnishing new vessels with outfits,” &c.
The first step in construing or interpreting the foregoing provisions is to determine in some way what particular business transactions (if any) the plaintiff had covenanted to abstain from “starting,” “commencing,” or “doing,” and whether there was any thing pertaining to a “ shipping and commission business,” or “business of the same nature or hind” other or different, or not included in those particular business transactions, which it was stipulated the plaintiff should not be “ debarred” from doing. In order to determine these questions with any degree of certainty, it is necessary to ascertain, either from the contract itself or evidence outside, the precise character, nature, and extent of the business which was “ then (now) being conducted and *566 carried on at No. 103 Broad street, under the name, &c., of D. R. De Wolf & Co., as a shipping and commission business.” This cannot be satisfactorily ascertained from the contract itself, because the term “ shipping business,” in its broadest extent, may mean any and every ldnd of business relating to ships, and may include ship-building; while the - term “ commission business,” in its largest signification, may mean any and every kind of business, for the transaction of which a commission is paid, and include every vendible commodity. It is clear that the term “ business conducted, &c., at No. 103 Broad street, in the name of D. R.De Wolf & Co., as a shipping-and commission business,” was not intended to have the large and extended signification above indicated. It was necessary and proper, therefore, to show by evidence aliunde the contract, what was the precise business carried on by the firm of De Wolf & Co. at No. 103 Broad street, “as 'a shipping and commission business.” This the counsel for the defendants was prohibited by the court from doing, though lie offered and desired so to do. Such ruling, I am of opinion, was erroneous.
Again, the plaintiff, in and by the contract, sells to the defendants not only his interest in the business of the firm of De Wolf & Co., but also the “ good-will ” of such business. And I see nothing in any other clause of the contract modifying or qualifying this provision. - If the term “ good-will of the business ” is to have any signification whatever, it must be held to be, even in its most restrictive sense, an agreement on the part . of a vendor that, in respect to the “ business ” which he thus sells the “ good-will ” of, he will not attempt, by any direct act or' word o'f his, to injure of depreciate' such business while being Carried on by his vendee, or divert from it any custom or "patronage which would otherwise come to it in consequence of the reputation and “good-will” pertaining to it while conducted, by the vendor. On the trial, defendants gave uncontradicted , evidence to show that, in a number of instances, the plaintiff: had deliberately and persistently intercepted business and custom, which would otherwise come to defendants’ firm, and' *567 which before pertained to the firm of De Wolf & Co., and diverted the same to himself, by representing to the customer that defendants were unable and had not the facility of doing such business on as favorable terms as the plaintiff. There was also evidence of pecuniary damages sustained by the defendants in consequence of such conduct. This evidence should have been submitted to the jury, and if found to be true, defendants were entitled to recover for such damage.
Again, without examining the evidence in detail, which is quite voluminous, it suffices to say there was evidence tending to show quite satisfactorily that plaintiff had assumed to, and did, against the objections of the defendants, transact all and every the commission business of and for a number of vessels in the port of New York, in which he (plaintiff) at the time of the making of the contract “ owned a share,” and which he was “ able to and could control,” thus wrongfully diverting to himself moneys, being proceeds of business which he had expressly sold to the defendants, and which was the consideration of their agreement to pay. There was also evidence that plaintiff had likewise, in a number of instances, “ bought for ” “ the customers of the present firm” (D. R. De Wolf & Co.), which he was expressly prohibited from doing, as well in the clause enumerating the particular transactions, which plaintiff is not “ debarred ” from doing, as in the preceding general prohibitory clause; and that plaintiff had received as profits of such business divers sums of money which justly belonged to the defendants. The jury should likewise have been permitted to take this evidence into consideration, and, if true, awarded to defendants such damages as they have sustained in consequence.
For these reasons the judgment should be reversed and a new trial ordered, costs to abide the event.